UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FEDERATED LIFE INSURANCE
COMPANY,

       Plaintiff,

v.                                Case No:  2:14-cv-568-FtM-38CM

FIFTH THIRD BANK, ROBERT E.
TARDIF, FLORIDA PETROLEUM
COMPANY LLC, EVANS ENERGY
PARTNERS LLC, KC
TRANSPORTATION LLC, E2
REAL ESTATE LLC and EVANS
OKEECHOBEE LLC,

       Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

    This matter comes before the Court upon review of the Motion to Intervene as Defendant, Reopen Interpleader, and Set Aside Judgment (Doc. 69)[2] filed by the Seminole Tribe of Florida, Inc. ("STOFI") on June 24, 2016.   On July 18, 2016, Evans

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Energy Partners, LLC ("Evans Energy") filed its response in opposition (Doc. 83),[3] to which STOFI replied (Doc. 99) on September 19, 2016.   On July 28, 2016, Interpleader Plaintiff, Federated Life Insurance Company ("Federated"), filed its response in opposition to STOFI's motion.   Doc. 90.   Then, on December 19, 2016,[4] Fifth Third Bank ("Fifth Third") also filed its response in opposition.   Doc. 108.   The motion, therefore, is now ripe for review.   For the reasons discussed below, the undersigned recommends that the motion be denied.

## I.     Requested Relief

STOFI requests the Court to set aside the October 22, 2015 judgment in this interpleader matter (Doc. 68) and permit it to intervene as an Interpleader Defendant so it may file an Answer, Affirmative Defenses, and Crossclaim and a Third Party Complaint against two additional nonparty individuals, Kousay Askar and Michael Ulizio.   Doc. 69 at 1.   STOFI has also indicated that it may seek additional money from Federated or seek discovery from Federated related to the alleged fraud.[5]   Doc. 90 at 9.   STOFI argues that the judgment should be set aside pursuant to Rules

---

[3] Evans Energy filed its response in opposition and attached the Affidavit of Michael Ulizio (Doc. 83-1) as Exhibit 1.   On the same day, it filed a Notice of Filing Affidavit in Support of Evans Energy Partners, LLC's Response in Opposition to Motion to Intervene, Reopen Interpleader and Set Aside Judgment (Doc. 84), which includes the same Affidavit of Michael Ulizio.

[4] The Court granted Fifth Third Bank several extensions of time to respond to the motion due to its representations that it needed additional time to investigate the matters and that it was attempting to resolve the issues raised in the motion with STOFI without court intervention.   *See e.g.,* Doc. 103; Doc. 104; Doc. 105; Doc. 106; Doc. 107.

[5] Although STOFI's motion or reply does not explicitly say so (*see* Doc. 69), Federated asserts in its response that it tried to stipulate with STOFI on its requested relief, provided STOFI did not also request to set aside the judgment dismissing Federated with prejudice. Doc. 90-4 at 3   ¶¶ 8-9.   STOFI, however, did not agree to such stipulation and instead indicated that it may seek more money from Federated.   *Id.*

60(b)(3),(6) of the Federal Rules of Civil Procedure because it was procured through fraud.  *Id.* at 13-14.   STOFI further argues that it is entitled to intervene as of right or, alternatively, permissively because of the fraudulent conduct that it claims occurred in this case.  *Id.* at 9-12.

## II.    Background

Federated issued two life insurance policies, each with an initial face value of $2,000,000.00, to Evans Oil Company, LLC ("Evans Oil").  Doc. 90-1.   The policies insured the life of Randy Long, Evans Oil's sole owner.  *Id.* at 3, 33.   Both policies contained provisions alerting the owner of a right to assign the policies if done by written request, signed by the owner, and filed at Federated's Home Office.  Doc. 90-1 at 11, 40.   The insurance policies, however, were assigned several times, not all of which complied with these notice requirements, which precipitated the filing of this statutory interpleader lawsuit by Federated.   STOFI filed the instant motion because it believes it has an interest in the policies by way of a fourth assignment of the policies, and thus, should have been notified of this lawsuit as an interested stakeholder.  *See e.g.*, Doc. 69 at 1-2.   A history of the transactions between the parties is warranted.

On April 16, 2010, Evans Oil assigned the policies to Fifth Third as collateral for a loan.  Doc. 69 at 4; Doc. 90-2 ¶ 6.   The assignment provided for the proceeds to be applied to Fifth Third's loan upon Randy Long's death or at maturity, with any remaining proceeds to go to the beneficiaries.  Doc. 90-1 at 29-30, 58-59.   Federated received written notice of, acknowledged, and accepted this assignment on May 7,

2010; however it did not know the amount of the loan by Fifth Third to Evans Oil. Doc. 90-2 ¶¶ 6-7.

On January 30, 2011, Evans Oil petitioned for bankruptcy in the United States Bankruptcy Court for the Middle District of Florida.   Doc. 109-1 at 2 ¶4.   As part of the bankruptcy proceedings, Evans Oil entered into an Asset Purchase Agreement with Florida Petroleum Company LLC ("Florida Petroleum"), whereby Florida Petroleum purchased certain assets of Evans Oil.[6]   Doc. 109-1 at 33-95; Doc. 109-2. The parties dispute whether the Evans-Florida Petroleum APA included the policies: Federated maintains that it was unclear whether this APA included the insurance policies, whereas STOFI contends that it did.   Doc. 90-2 ¶ 15; Doc. 69-5 at 7.

In October 2012, Florida Petroleum assigned its interests in the Evans-Florida Petroleum APA to Evans Energy, KC Transportation, E2 Real Estate, and Evans Okeechobee through an Assignment and Assumption Agreement.[7]   Doc. 90-4 at 7-9. Then, on May 31, 2013, Evans Energy and KC Transportation sold certain of their assets to STOFI through an Asset Purchase Agreement.[8]   Doc. 69-2.   Part of STOFI's consideration in entering into the Evans Energy-STOFI APA included an assumption of Evans Energy's debt to Fifth Third.   Doc. 69-3 ¶ 4.   Thus, on the same day, STOFI delivered a Term Note to Fifth Third for $5,625,000.00.   Doc. 69-4.

---

[6] Hereinafter, the Court will refer to this transaction as, the "Evans-Florida Petroleum APA."

[7] Hereinafter, the Court will refer to this transaction as "Florida Petroleum-Evans Energy AAA."

[8] Hereinafter, the Court will refer to this transaction as the "Evans Energy-STOFI APA."

Meanwhile, back in December 31, 2012, Randy Long had petitioned for bankruptcy in the United States Bankruptcy Court for the Middle District of Florida. Doc. 90 ¶ 12.   He died approximately one year later.   *Id.* ¶ 13.

In early 2014, Federated received an inquiry from Fifth Third as to how it may make a claim on the policies.   Doc. 90-2 at 4 ¶ 10.   Federated also received correspondence from Evans Oil that informed Federated of the Evans-Florida Petroleum APA.   *Id.* ¶ 11.   The correspondence, however, indicated that the policies were excluded from that transaction.   *Id.*   Federated could not ascertain from the language of the Evans-Florida Petroleum APA whether the policies were included in the sale.   *Id.* at 3-4 ¶¶ 14, 15.   Subsequently, in June of 2014, the trustee in the Evans Oil bankruptcy abandoned any interest in the policies because of the collateral assignment to Fifth Third.   Doc. 109-4; Doc. 109-5.   Consequently, the residual rights to the policies transferred to Evans Oil's sole owner, the trustee of the bankruptcy estate for Randy Long.   Doc. 90 at 4 ¶ 15.

Unsure of who could claim an interest in the policies, on September 30, 2014, Federated filed a statutory interpleader, pursuant to 28 U.S.C. § 1335, against Fifth Third, Robert E. Tardif, as Trustee for the Bankruptcy Estate of Randy Long (the "Trustee"), and Florida Petroleum.   Doc. 1.   After filing this action, counsel for Federated learned of the Florida Petroleum-Evans Energy AAA and amended its complaint to include Evans Energy, KC Transportation, E2 Real Estate, and Evans Okeechobee as Interpleader Defendants.   Doc. 20; Doc. 90-2 at 4 ¶¶ 17-18; Doc. 90-4 at 2 ¶ 5.

Pursuant to a Court Order (Doc. 35), Federated deposited the proceeds of the policies, plus applicable interest, into the Court's Registry on January 27, 2015.   Doc. 37; Doc. 38; Doc. 39.   Subsequently, the Court dismissed Federated with prejudice and discharged it from further liability with respect to the policy proceeds.   Doc. 57. The Court also entered default judgment against the Trustee.   *Id.*

On September 18, 2015, the remaining Interpleader Defendants notified the Court that they resolved their respective claims to the policies' proceeds and reached an agreement as to their distribution.   Doc. 64 at 1.   They also requested a Court order directing the Clerk of Court to issue checks drawn on the court registry and made payable according to the parties' agreement.[9]   *Id.* at 2.   On September 24, 2015, the Court entered an Order granting the parties' request, and directed the Clerk to distribute the proceeds as agreed to by the Interpleader Defendants.   Doc. 65.   The Clerk complied; and entered judgment on October 22, 2015.   Doc. 66; Doc. 67; Doc. 68.

Approximately eight months later, STOFI filed the instant motion.   STOFI maintains that it acquired the insurance policies through the Evans Energy-STOFI APA.   Doc. 69-5 ¶ 7.   STOFI alleges that both Evans Energy and Fifth Third Bank were aware of STOFI's purchase of Evans Energy's assets and the Term Note to Fifth Third; however, they both filed answers in this interpleader action falsely claiming entitlement to the proceeds.   Doc. 69 at 2-3.   STOFI alleges that Evans Energy's

_____

[9] The parties agreed that Evans Energy would receive $2,257,804.51, representing $2,250,000.00 of policies' proceeds and $7,804.51 in interest; and Fifth Third would receive $1,756,070.18, representing $1,750,000 of policies' proceeds and $6,070.18 in interest.   Doc. 64 at 2.

principal, Kousay Askar, and Fifth Third Bank colluded with STOFI's former Chief Financial Officer ("CFO"), Michael Ulizio, and STOFI's former attorney, Christopher Lombardo, to keep STOFI out of this case; and STOFI's Board of Directors and General Counsel were unaware of the existence of this case. *See e.g.*, Doc. 69 at 2. As a result, STOFI claims it lost access to the policy proceeds. Alternatively, at minimum, it claims it should have received credit for nearly $1.8 million on the payments already made to Fifth Third on the Term Note. Doc. 69 at 10.

Michael Ulizio ("Ulizio") served as STOFI's CFO from 2012 through January 29, 2016.[10] Doc. 69-9 ¶ 3. Christopher Lombardo ("Lombardo") was STOFI's counsel from 2013 through April 2016.[11] Doc. 69-5 ¶ 6. Tena Ganit ("Ganit") was Ulizio's subordinate and served as STOFI's financial controller from May 2013 to February 2016, after which she assumed the role of executive director of finance. Doc. 69-9 ¶ 2; Doc. 99-3 ¶ 7.

An affidavit of Ganit states that sometime in mid-2015, Ulizio informed Ganit that Randy Long had died and that there possibly existed an insurance policy on his life that might benefit STOFI. Doc. 69-9 ¶ 7. Ulizio told Ganit that he would follow up with her on this matter, but he never discussed it with her again nor did she inquire of him further about it. *Id.*

---

[10] STOFI terminated Ulizio for reasons unrelated to this interpleader action. Doc. 69-9 at 1.

[11] Lombardo, who represented Evans Energy in this action (Doc. 26 at 4), was directly involved with the Evans Energy-STOFI APA as a representative for Evans Energy. Doc. 69-5 ¶ 5; *see also* Doc. 69-8 at 2. Shortly following the conclusion of the Evans Energy-STOFI APA, STOFI retained Lombardo to prosecute a claim on a promissory note that STOFI retained as an asset under that APA. Doc. 69-5 ¶ 6. Lombardo represented STOFI in prosecuting its promissory note claim while this interpleader case was pending. *Id.* ¶ 13.

On February 11, 2016, during a STOFI board meeting, someone mentioned that Randy Long had died.  Doc. 69-5 ¶ 8.  The board discussed whether there existed an insurance policy on his life that would inure to the benefit of STOFI.  *Id.* At this time, Ganit advised the board of her previous conversation with Ulizio.  Doc. 69-9 ¶ 9.  The board decided to inquire into the matter, and the following day Ganit contacted James Mitchell ("Mitchell"), Fifth Third's vice president, who informed Ganit that the proceeds were disbursed in October 2015 pursuant to the Court's Order.  Doc. 69-9 ¶ 10.  Soon thereafter, STOFI's board of directors directed its general counsel, Mark Solomon ("Solomon"), to investigate the matter.  Doc. 69-5 ¶ 10.

Through Solomon's efforts, STOFI learned of this lawsuit and discovered the following information.  In all of the Court documents, STOFI was mentioned but once, in Evans Energy's Certificate of Interested Persons and Corporate Disclosure Statement.  Doc. 69 at 5 (citing Doc. 33).  On March 2015, while this case was pending, Mitchell e-mailed Ulizio: "I had some discussions internally regarding the issue. Do you have anything that documents the Tribe is entitled to the proceeds. I don't think the Bank wants to fight over this one."  Doc. 69-6 at 1.  Ulizio responded: "Long list of documents. I went over them in Lombardos [sic] office."  *Id.*  Two months later, Jim Ray, another vice president of Fifth Third, e-mailed Ulizio: "Do you have some time this week that you and I can sit down and chat about the Randy Long Life insurance. I would like to keep it between you and I, to see if we can work this out without attorneys in the room."  Doc. 69-7 at 2.  Ulizio responded: "Absolutely.

I couldn't agree more. I've been keeping Chris Lombardo on a leash." *Id.* The following month, on June 24, 2015, Lombardo wrote a letter to STOFI's financial auditors in connection with an audit of STOFI's financial statements as of September 30, 2014 wherein he stated:

> Florida Petroleum, [Evans Energy], KC Transportation, LLC, E2 Real Estate, LLC, and Evans Okeechobee, LLC, are parties to that certain United States District Court, Middle District of Florida Case No. 2:14-CV-568-SPC. The Tribe has an interest in said litigation as the successor to said entities. Said action is an interpleader action wherein [Federated] interplead the insurance proceeds from two policies held be [sic] Randy Long. The parties are currently discussing settlement. Only a favorable outcome is possible, as there are no claims alleged against the defendants to the action. The parties are merely arguing as to their share of the insurance proceeds.[12]

Doc. 69-8.   STOFI states it did not receive this letter.   Doc. 99-3 ¶ 11.   On October 15, 2015, after the Clerk issued disbursement vouchers per the Court's Order, Ulizio e-mailed Lombardo: "Chris – please release funds to Askar per our discussion."   Doc. 69-11 at 3.

STOFI asserts that "[n]either Lombardo as STOFI's attorney nor Ulizio as its Chief Financial Officer had any authority from STOFI to settle the interpleader action with Fifth Third or authorize the disbursement of over $2.2 million of the insurance proceeds to Kausar Askar without the consent of the Board."   Doc. 69-5 ¶ 15.   STOFI conducts its activities by formal resolutions, which must be adopted by a majority of the board conducted at formal board meetings.   Doc. 69-10 ¶ 5.   STOFI

---

[12] STOFI asserts that this letter is contrary to Evan Energy's Answer in this lawsuit in which it alleged that Evans Energy held sole beneficial interest in the proceeds.   Doc. 69 at 7.   As noted, Lombardo represented Evans Energy in this action.   Doc. 26 at 4.

asserts that Ulizio approved the funds without the consent of the board.  Doc. 69-10 ¶ 9.

### III.  Discussion

### a)  STOFI's Motion to Intervene

In the Eleventh Circuit, a party seeking to intervene as a matter of right under Rule 24(a)(2), Federal Rules of Civil Procedure, must satisfy four factors, and if the party is able to do so the Court must allow that party to intervene.  *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996); *TIG Specialty Ins. Co. v. Financial Web.com, Inc.*, 208 F.R.D. 336, 337 (M.D. Fla. 2002) (citing *Fed. Savings & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993)).  Specifically, a party seeking to intervene must show that its application to intervene is timely, it has an interest in the property that is the subject of the action, disposition of the action may impede or impair that party's ability to protect its interest, and the current parties do not adequately represent the potential intervenor's interest.  *Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004).  Rule 24(b) provides for permissive intervention, upon timely motion, when the putative intervenor's claims or defenses involve common questions of law or fact and will not prejudice the existing parties or delay resolution of the action.  Fed. R. Civ. P. 24(b)(1)(B),(3).

In determining whether a motion to intervene is timely, courts consider four factors:

(1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving

to intervene; (2) the extent of prejudice to the existing parties as a result
of the proposed intervenor's failure to move for intervention as soon as
it knew or reasonably should have known of its interest; (3) the extent
of prejudice to the proposed intervenor if the motion is denied; and (4)
the existence of unusual circumstances militating either for or against
a determination that their motion was timely.

*Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002).

Although "the mere fact that judgment already has been entered should not by itself

require an application for intervention to be denied," intervention after entry of final

judgment is disfavored. *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1479 (11th

Cir. 1993) (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir.1977)[13]

and citing *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977)),

*abrogated on other grounds by Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th

Cir. 2007).

Here, STOFI argues that it had no knowledge of this action until February

2016, after the final judgment. Doc. 69 at 9-10. STOFI admits, however, that

STOFI's CFO was aware of this action since at least March 2015, while this case was

pending. *Id.* at 6. Ulizio has attached an affidavit stating that he became aware of

this action in February 2015. Doc. 83-1 ¶ 12. He states he "had authority to act on

behalf of STOFI," and "was in charge of all STOFI business matters and its day-to-

day operations," including acting as the primary contact to interface with Evans

Energy. *Id.* ¶ 2. Ulizio, in his capacity as CFO for STOFI, "investigated the facts

of the interpleader action and determined that STOFI did not maintain an interest

---

[13] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc),
the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered
prior to October 1, 1981.

in the proceeds from the Federated life insurance policies." *Id.* ¶ 15.  He avers he informed one of STOFI's board members and its newly-elected president of the interpleader action and his assessment that STOFI was not entitled to the policies' proceeds, an assessment with which both the board member and president agreed. *Id.* ¶¶ 16-17.  Ultimately, Ulizio assisted in negotiating the settlement agreement between Fifth Third and Evans Energy, and instructed Lombardo to disburse the settlement proceeds to Evans Energy.  Doc. 83-1 ¶¶ 18-20.  To refute these averments by Ulizio, STOFI has provided several affidavits from its board members stating that Ulizio never informed the president or any member of STOFI's board of directors of the instant action and that Ulizio did not have the authority to make a judgment regarding the policies' proceeds without board approval.  *See* Doc. 99-1; Doc. 99-2; Doc. 99-3; Doc. 99-4.

Generally, under Florida law,[14] knowledge of an agent or employee acquired within the scope of his authority may be imputed to his principal or employer.[15] *Chang v. JPMorgan Chase Bank, N.A.*, – F.3d – , No. 15-13636, 2017 WL 65371, at *4 (11th Cir. Jan. 6, 2017).  An exception, however, exists when an individual "is acting adversely to the corporation. In that situation, the officer's knowledge and conduct are not imputed to the corporation." *Beck v. Deloitte & Touche*, 144 F.3d

---

[14] In this case, jurisdiction is premised on diversity, albeit minimal diversity as 28 U.S.C. 1335 permits.  Doc. 20 at 2 ¶ 9.  "[B]ecause jurisdiction is premised on diversity, the procedural aspects of the case are controlled by federal law, and the substantive aspects of the case are controlled by Florida law." *Ohio Nat. Life Assur. Corp. v. Langkau ex rel. Estate of Langkau*, 353 F. App'x 244, 247 (11th Cir. 2009) (citing *Hammer v. Slater*, 20 F.3d 1137, 1140 (11th Cir.1994)).

[15] "STOFI is a federal corporation, chartered and approved by the Department of the Interior, pursuant to section 17 of the Indian Reorganization Act of 1934."  Doc. 99-1 ¶ 1.

732, 736 (11th Cir. 1998); *see also Chang*, 2017 WL 65371, at *4 (noting that under the Restatement (Third) of Agency § 5.04 (2006), the agent's knowledge will not be imputed when "the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent's own purposes or those of another person.").

Recently, the Eleventh Circuit stated that the interests must be "entirely adverse to the [principal's] interests and the [principal] received no benefit whatsoever." *Freeman v. JPMorgan Chase Bank, N.A.*, – F. App'x. –, No. 15-14944, 2017 WL 128002, at *6, (11th Cir. Jan. 13, 2017). The *Beck* court also explained,

> a corporate officer's interest [must] be entirely adverse for the exception
> to apply (*i.e.,* his actions must neither be intended to benefit the
> corporation nor actually cause short– or long-term benefit to the
> corporation). *See* [*Seidman & Seidman v. Gee*, 625 So. 2d 1, 3 (Fla. Dist.
> Ct. App. 1992), *cause dismissed*, 653 So. 2d 384 (Fla. 1995)]. Under
> Florida law, the knowledge of a corporate officer whose fraud or
> misbehavior brings short-term gain to the corporation, or merely injures
> a third party, is imputed to the corporation, even if the officer's
> misbehavior ultimately causes the corporation's insolvency.

144 F.3d at 736. The court in *Chang*, concluded that "imputation is permitted when an agent's actions were designed to turn the corporation into an engine of theft against outsiders, as opposed to when an agent took actions that diminished the assets of the corporation itself." 2017 WL 65371, at *4 (citing *Gee*, 625 So. 2d at 3). Another court looking to the Restatement for guidance noted its commentary that

> a principal will be held to the knowledge of an agent who acts adversely
> to the principal if: the agent enters into negotiations within the scope of
> his powers and the person with whom he deals reasonably believes him
> to be authorized to conduct the transaction; or, before he has changed
> his position, the principal knowingly retains a benefit through the act of
> the agent which otherwise he would not have received.

*LanChile Airlines v. Connecticut Gen. Life Ins. Co. of N. Am.*, 759 F. Supp. 811, 814 (S.D. Fla. 1991) (citing Restatement (Second) of Agency, § 282(2)(b),(c) (1958)). The burden is on the principal to establish this narrow exception. *Id.* at 737.

Applying the general principle, Ulizio's knowledge of this lawsuit as of February 2015 would be imputed to STOFI. Here, however, STOFI argues that the adverse exception applies because Ulizio's actions in concealing the interpleader lawsuit and his active engagement in the settlement to ensure that a majority of the proceeds went to Kaysay Askar rise to the level of fraud. Doc. 99 at 6. STOFI, thus, does not allege that Ulizio acted for his own benefit, but that of a third party; nor does it allege that Ulizio gained anything personally. In its motion, STOFI contends that Ulizio colluded with Fifth Third and Evans Energy in perpetrating this fraud. *See* Doc. 69. In its reply, however, it contends that "Ulizio used his CFO title to deceive other parties into believing Ulizio spoke for STOFI." Doc. 99 at 1.

The Court concludes that Ulizio's knowledge may be imputed to STOFI. Ulizio was STOFI's CFO in charge of its day-to-day operations. Doc. 83-1 ¶ 1. Ulizio states that at the time of the Evans Energy-STOFI APA, he and STOFI were not aware that Evans had purchased two key man life insurance policies from Federated. *Id.* ¶ 8. This is in comport with STOFI's own declarations that in its February 2016 board meeting there was "discussion over whether any insurance existed on his life which could inure to the benefit of STOFI." *See e.g.*, Doc. 69-5 ¶ 9. Upon learning of the policies and of this lawsuit, STOFI's CFO "investigated the facts of the interpleader action and determined that STOFI did not maintain an

interest in the proceeds" because it did not acquire or otherwise obtain the insurance policies as a result of the Evans Energy-STOFI APA. Doc. 83-1 ¶ 15, 21. Ulizio asserts that the Evans Energy-STOFI APA included only certain assets that were appraised and evaluated prior to the date STOFI acquired the assets, which did not include the insurance policies. *Id.* ¶ 10. Indeed, as Fifth Third points out, Ulizio signed STOFI's Letter of Intent setting forth its and Evans Energy's intentions prior to entering into Evans Energy-STOFI APA, and necessarily had personal knowledge of the transaction and the assets involved. Doc. 69-3; Doc. 108 at 8. STOFI's CFO then elected not to participate in this lawsuit.

The Court cannot conclude that STOFI had an indisputable sole interest in the policies. As noted, Federated filed this action in part because it could not ascertain whether this Evans-Florida Petroleum APA included the insurance policies. *See e.g.,* Doc. 90-2 ¶ 15. Additionally, the bankruptcy Trustee abandoned interest in the insurance policies because he determined "Fifth Third Bank (5/3) holds a perfected security interest on all of Debtors' assets including the life insurance policy [on the life of Randy Long]" and that "[b]ecause of the 5/3 deficiency balance and perfected security interest, Trustee has determined that the policies are burdensome and should be abandoned." Doc. 109-4 at 3 ¶¶ 5, 8.[16] Moreover, the Evans Energy-STOFI APA that STOFI has provided to the Court lists certain "Insurance Policies attached hereto as Exhibit 6" that were included in this purchased agreement; however Exhibit 6 fails to attach or list any insurance policies. Doc. 69-2 at 3, 32.

---

[16] The Court has taken judicial notice of this filing. Doc. 111.

Thus, although STOFI points to Ulizio's March 10, 2015 email (Doc. 69-6) and Lombardo's June 24, 2015 audit letter (Doc. 69-8) as evidence that it was undisputed that STOFI maintained the sole interest in the policies, the circumstances combined make it objectively and reasonably not so.   As there was a reasonable dispute regarding STOFI's ownership of the policies, the Court cannot conclude that Ulizio's actions were entirely adverse to STOFI or merely a tactical decision on behalf of STOFI.   A tactical decision by a CFO not to pursue a non-existent or even a weak claim certainly benefits the corporation in avoiding needless expenditure of money and resources.   Although it is a close call, with the facts before it, the Court cannot conclude that STOFI met its burden that the adverse exception applies here, and thus Ulizio's knowledge of this lawsuit as of February 2015 should be imputed to STOFI. By STOFI's admission, too, Ganit knew of the possibility of life insurance policies that could inure to the benefit of STOFI as early as the summer of 2015, yet did not inquire any further when Ulizio did not follow-up with her, as promised.   The standard is whether STOFI moved to protect its interest as soon as it knew or reasonably should have known of its interest.

Certainly, the Court takes no position on whether Ulizio acted in accordance with STOFI's internal procedures on this circumstance.   Whether or not Ulizio timely informed STOFI's board of his tactical decision is an issue that STOFI can pursue against him in a separate lawsuit for the alleged breach of his fiduciary duties. However, the other timeliness factors militate against intervention at this post-judgment stage.   STOFI seeks to file a cross-claim and a third party complaint

alleging conversion, civil theft, breach of the duty of loyalty, breach of fiduciary duty, conspiracy against the various parties, and to set aside judgment against all parties. Doc. 69-1. Thus, STOFI not only seeks to relitigate issues that already have been resolved by the parties and by the Court but to also insert various other causes of action. The prejudice to STOFI in denying its motion is minimal, whereas the prejudice to the parties, especially Federated, in granting the motions is great.

STOFI asserts no wrongdoing by Federated; its claims rest on alleged fraud and collusion by Ulizio, Fifth Third, and Evans Energy. Yet, STOFI seeks to keep Federated involved in this lawsuit despite the Court Order dismissing it with prejudice and discharging it from further liability. Doc. 57. The reasons for doing so are to seek discovery from Federated related to the other parties' alleged fraud and to attempt to require Federated to interplead additional money. Doc. 90 at 14; Doc. 90-4 at 3 ¶ 9. Federated claims substantial prejudice should it be forced to participate in this lawsuit after it already has paid the proceeds in the court registry and the Court has relieved it from further responsibility. *Id.* The Court agrees that exposing Federated to double liability and to incurring additional fees in defending itself when it is a disinterested stakeholder and when STOFI asserts no wrongdoing on its part is substantially prejudicial to Federated. On the other hand, aside from its claim setting aside the judgment, if STOFI wishes to seek recovery for the purported fraud and collusion between its former CFO, Fifth Third, and Evans Energy, it can easily and more appropriately pursue its claims against these parties in a separate action. Accordingly, the Court concludes that STOFI's motion to

intervene as of right is untimely and due to be denied on this basis. Additionally, because permissive intervention requires the same timeliness analysis, *United States v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983), the motion for permissive intervention is also due to be denied on this basis.

### b) STOFI's Motion to Set Aside Judgment

STOFI seeks to set aside the Court's Final Judgment under Rule 60(b)(3) and (6) of the Federal Rules of Civil Procedure which state:

> (b) **Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . .
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> . . .
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). In order to bring a Rule 60(b) motion, a person must have standing as the rule clearly states that a court may relieve *a party or its legal representative* from a final judgment. *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1519 (11th Cir. 1987). A nonparty who asserts that there has been fraud on the court has standing to raise a challenge of such fraud if the nonparty's interests are directly affected by the final judgment. *Id.*

To prevail on a 60(b)(3) motion, the movant must "prove by clear and convincing evidence that *an adverse party* has obtained the verdict through fraud,

misrepresentation, or other misconduct." *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.,* *478 F.3d 1303, 1314 (11th Cir. 2007)* (citation omitted)(emphasis added).   The movant must also show "that the conduct complained of prevented the moving party from fully and fairly presenting his case." *Taylor v. Texgas Corp.,* 831 F.2d 255, 259 (11th Cir. 1987) (citation omitted).

Here, STOFI claims that it had an interest in the insurance policies and was deprived of the opportunity to assert that interest due to the wrong-doing of the Interpleader Defendants, Fifth Third and Evans Energy, in conjunction with its CFO Ulizio.   Accepting STOFI's factual allegations as true, the Court is satisfied that it has standing to assert a Rule 60(b) motion; however, it is not satisfied that it has shown by clear and convincing evidence that Fifth Third or Evans Energy obtained the final judgment in this case through fraud, misrepresentation, or other conduct. *See e.g., Kerwit Med. Prod., Inc. v. N. & H. Instruments, Inc.,* 616 F.2d 833, 836 (5th Cir. 1980) (accepting as true the movant's factual allegations for purposes of a Rule 60(b) motion).

With respect to Fifth Third, the fraud allegations are that it failed to inform the Court of STOFI's interest in the policies; its vice president Mitchell inquired Ulizio whether STOFI has any documents that would prove STOFI's entitlement to the policies; and its vice president Ray invited Ulizio to have a private conversation regarding the policies without attorneys present.   With respect to Evans Energy, the fraud allegations rest on its filing an answer claiming an interest in the policies when its attorney acknowledged in an audit letter on behalf of STOFI that STOFI "has an

interest in said litigation."   STOFI makes the connection that Ulizio colluded with these adverse Interpleader Defendants to keep STOFI out of this case and the Court unaware of its interest in this litigation.   STOFI, however, also acknowledges that "Ulizio used his CFO title to deceive other parties into believing Ulizio spoke for STOFI." Doc. 99 at 1.   Because the standard is that adverse parties obtained the judgment through fraud, misrepresentation, or concealment, these allegations, even if taken as true do not rise to the level of clear and convincing evidence of wrong-doing by Fifth Third and Evans Energy.   As stated above, there was a reasonable dispute as to the parties' entitlement to the proceeds.   The "well-settled rule" is that "the mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to "fraud upon the court" for purposes of vacating a judgment under Rule 60(b)." *Kerwit Med. Prod., Inc.*, 616 F. 2d at 837.

Given that Fifth Third and Evans Energy could rightfully have assumed that Ulizio acted on STOFI's behalf, their conduct does not rise to the level of fraud.   Cf. *Taylor*, 831 F.2d at 259-60 (in an age discrimination case, the employer was not entitled to relief from judgment when employee failed to reveal pension benefits received following discharge because the employee could "rightfully assume" that the employer was aware of the payments, and this conduct did not rise to the level of fraud).   Based on these circumstances, the Court cannot presume fraud exists as none has been proven by clear and convincing evidence.   Here, the conduct complained of is perfectly summed by STOFI's allegations that its own CFO's "breached every one of his duties of loyalty and fiduciary duties." Doc. 99 at 1.   Even

if so, Ulizio's conduct acting as STOFI's agent is insufficient to show by clear and convincing evidence that the remaining Interpleader Defendants, as adverse parties, committed fraud.

As to STOFI's alternative relief from judgment, "Rule 60(b)(6) offers relief from judgment only to accomplish justice and only in the most 'extraordinary' circumstances." *Harduvel v. Gen. Dynamics Corp.*, 801 F. Supp. 597, 613 (M.D. Fla. 1992). Moreover, "[i]f the movant's request *can* be classified under any one of the first five clauses, the court must decline to consider the sixth clause, regardless of its failure to grant relief under another clause." *Id.* (citing *U.S. v. Real Property & Residence*, 920 F.2d 788, 791 (11th Cir.1991). STOFI argues that the Court should set aside its judgment because STOFI's due process rights were violated when it was deprived of any opportunity to assert its claims. Doc. 69 at 12-13. As discussed above, the deprivation of this opportunity rests on the same grounds – fraud and collusion among its CFO with Fifth Third and Evans Energy – as STOFI's motion to vacate under Rule 60(b)(3). Accordingly, the Court cannot and should not consider the allegation of fraud made pursuant to Rule 60(b)(6).

## IV.   Conclusion

Because STOFI's motion to intervene as of right or permissively is untimely, it is due to be denied on this basis. Because STOFI failed to allege with clear and convincing evidence that Fifth Third or Evans Energy committed fraud, misrepresentation, or other misconduct on the Court, its motion to set aside judgment pursuant to Rule 60(b)(3) is due to be denied. Because the same allegations upon

which STOFI relies in its Rule 60(b)(3) motion make up the "extraordinary circumstances" in which STOFI relies to justify setting aside the judgment under 60(b)(6), the Court cannot and should not entertain this motion.   Lastly, in its response, Federated has requested attorney's fees but did not discuss entitlement to same.   Because it made the request as part of its response and not through separate motion, neither party has responded to the request.   The Court should deny the request on this basis and for the same reasons it previously denied Federated's request for fees.   Doc. 35.

ACCORDINGLY, it is respectfully

**RECOMMENDED** that the Court:

1.    **DENY** the Motion to Intervene as Defendant, Reopen Interpleader, and Set Aside Judgment (Doc. 69).

2.    **DENY** Interpleader Plaintiff, Federated Life Insurance Company's request for reasonable attorney's fees (Doc. 90 at 10).

3.    **DENY** Interpleader Plaintiff, Federated Life Insurance Company's Request for Oral Argument on Seminole Tribe of Florida, Inc.'s Motion to Intervene as Defendant, Reopen Interpleader and Set Aside Judgment (Doc. 91) filed on July 28, 2016 as unnecessary.

**DONE** and **ENTERED** in Fort Myers, Florida on this 31st day of January, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies: Counsel of record