UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FEDERATED LIFE INSURANCE
COMPANY,

      Plaintiff,

v.                                    Case No:   2:14-cv-568-FtM-38CM

FIFTH THIRD BANK, ROBERT E.
TARDIF, FLORIDA PETROLEUM
COMPANY LLC, EVANS ENERGY
PARTNERS LLC, KC
TRANSPORTATION LLC, E2 REAL
ESTATE LLC and EVANS
OKEECHOBEE LLC,

      Defendants.
_____/

**OPINION AND ORDER**[1]

      This matter comes before the Court on United States Magistrate Judge Carol Mirando's Report and Recommendation (Doc. 112) dated January 31, 2017. Judge Mirando recommends denying Seminole Tribe of Florida, Inc.'s Motion to Intervene as Defendant, Reopen Interpleader, and Set Aside Judgment (Doc. 69).[2] Seminole has filed timely objections to the Report and Recommendation. (Doc. 115). Interpleader Plaintiff

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] Judge Mirando also recommends denying Interpleader Plaintiff Federated Life Insurance Company's requests for oral argument (Doc. 91) and attorney's fees (Doc. 90 at 10).

Federated Life Insurance Company and Interpleader Defendants Fifth Third Bank and Evans Energy Partners, LLC have responded to Seminole's objections. (Doc. 116; Doc. 117; Doc. 118). Thus, the Report and Recommendation is ripe for review.

## INTRODUCTION

This case started as a statutory interpleader action to resolve potential claims to life insurance policies (hereinafter, the "Policies"). It commenced in September 2014 and resolved thirteen months later with Evans Energy and Fifth Third splitting the Policies' proceeds.

Seminole played no role in the interpleader action. The reason for its non-action is disputed. According to Seminole, it is the victim of a conspiracy headed by certain interpleader defendants and other participants to deprive it of the Policies' proceeds. Seminole maintains that the conspirators colluded to keep it in the dark about the interpleader because they knew Seminole had the sole interest in the Policies. The opposing view is that Seminole's former chief financial officer, Michael Ulizio, knew of the interpleader action during its pendency, and he elected not to make a claim on Seminole's behalf because he determined that it had no claim to the Policies. The plot thickens, however, because Seminole maintains that Ulizio participated in the conspiracy. It also points an accusatory finger at Christopher Lombardo, Esq., who not only represented Evans Energy in this action and other related matters, but also Seminole in another case.

Having been left out of the interpleader, Seminole wants the Court to set aside the judgment and reopen the case. Seminole charts this course because, now that the money has been disbursed, it wants to assert cross-claims against the named defendants and bring a third-party complaint against non-parties Ulizio and Kousay Askar, who controlled

Evans Energy. Seminole's proposed causes of action are conversion, civil theft, breach of the duty of loyalty, breach of fiduciary duty, and conspiracy. (Doc. 69-1; Doc. 115-1). Against this backdrop, the Court will outline the facts pertinent to the issues at hand.

## BACKGROUND[3]

Federated Life initially issued the Policies to Evans Oil Company, LLC to insure the life of its sole owner, Randy Mural Long. Evans Oil assigned its rights to the Policies to Fifth Third as collateral for a loan. When Evans Oil petitioned for bankruptcy months later, Florida Petroleum Company, LLC purchased certain assets of Evans Oil. That tenure did not last long, as Florida Petroleum assigned its interests in the assets to Evans Energy, KC Transportation, LLC, E2 Real Estate, LLC, and Evans Okeechobee, LLC. Askar controlled all four companies.

Seminole thereafter purchased assets from Evans Energy and KC Transportation. (Doc. 69-2). At that time, Evans Energy owed Fifth Third $5.625 million. Thus, as part of Seminole's consideration for the assets, it gave Fifth Third a Term Note for $5.625 million, eliminating Evans Energy's debt. (Doc. 69-4).

Whether the Policies were included in the above assignments and asset purchases was – and still is – disputed. Indeed, in the months following Long's death, Federated Life received inquiries regarding the Policies. Unsure of who had valid claims to the Policies, Federated Life filed this statutory interpleader action against Fifth Third, Florida Petroleum, and Robert E. Tardif, as trustee for the bankruptcy estate of Randy Mural

---

[3] Because the Report and Recommendation details at length the facts of this case, the Court will recite, for brevity's sake, only the facts pertinent to the issues before it.

Long.[4]  (Doc. 1).  Federated Life amended its pleading, adding Evans Energy, KC Transportation, E2 Real Estate, and Evans Okeechobee as named defendants.  (Doc. 20).

In January 2015, the Court found interpleader to be appropriate.  (Doc. 35).  Thus, Federated Life deposited the Policies' proceeds into the Court's Registry,[5] and the interpleader defendants made their claims.  (Doc. 37; Doc. 38).  Nine months later, Fifth Third, Evans Energy, KC Transportation, E2 Real Estate, Evans Okeechobee, and Florida Petroleum resolved their claims and agreed that Fifth Third and Evans Energy would split the Policies' proceeds.  (Doc. 64).  Consequently, the Court directed the Clerk of Court to release the proceeds and close the case.[6]  The Clerk entered judgment on October 22, 2015.  (Doc. 68).

During the above events, Ulizio served as Seminole's CFO.  He held that position from 2012 until January 29, 2016.  Ulizio worked for Seminole when it purchased Evans Energy's assets in May 2013.  (Doc. 84 at ¶ 7).  At that time, Ulizio claims that neither Seminole nor he knew that Evans Energy had purchased the Policies.  (*Id.* at ¶ 8).  According to Ulizio, Seminole did not purchase the Policies from Evans Energy – a fact that Seminole now disputes.  (*Id.* at ¶ 10; Doc. 69-5 at ¶ 7).  And Ulizio alleges that he did not learn of the Policies until after Long died.  (Doc. 84 at ¶ 9).

---

[4] The Court eventually entered default judgment against Robert E. Tardif, Trustee for the Bankruptcy Estate of Randy Long.  (Doc. 60).
[5] On February 27, 2015, the Court dismissed with prejudice Federated Life from the interpleader action and discharged it from further liability.  (Doc. 57).
[6] Evans Energy received $2,257,955.93 (Doc. 66), while Fifth Third Bank received $1,756,187.87 (Doc. 67).

Pertinent here, Ulizio also claims that he learned of the interpleader action in late February 2015.  (Doc. 84 at ¶ 12).  As CFO, Ulizio avers that he "investigated the facts of the interpleader action and determined that [Seminole] did not maintain an interest in the [Policies'] proceeds."  (Id. at ¶¶ 15, 21).  Ulizio states that he told Seminole's president and board member of the interpleader and Seminole's non-interest in the proceeds.  (Id. at ¶¶ 16-17).  Despite Seminole's disinterest, he assisted Evans Energy and Fifth Third in settling their claims to the Policies.  (Id. at ¶ 18).  Ulizio also instructed Lombardo, on behalf of Seminole, to disburse the settlement proceeds to Evans Energy.  (Id. at ¶ 20; Doc. 69-11).

According to Tena Grandit, Seminole's former financial controller and current executive director of finance, Ulizio told her in "mid-2015" that Long had died and "possibly had an insurance policy on his life which might benefit [Seminole]."  (Doc. 69-9 at 9).  Grandit maintains that Ulizio told her that "he would follow up on the matter and let [her] know if anything was discovered.  Ulizio did not discuss the matter with [her] again."  (Id. at ¶ 7).  Grandit says that Ulizio never followed up with her.  (Id.).

On February 11, 2016, approximately four months after judgment had been entered, Seminole held a Board meeting in which Long's death was mentioned.  (Doc. 69-5 at ¶ 8).  Grandit advised the Board of her conversation with Ulizio.  (Doc. 69-9 at ¶ 9).  Upon this information, the Board discussed "whether any insurance existed on his life which could inure to the benefit of [Seminole]."  (Doc. 69-5 at ¶ 8).  From there, the Board tasked Marc Solomon, Seminole's general counsel, to investigate the matter.  (Id. at ¶ 10).

Five days after the Board meeting, Solomon emailed Lombardo requesting all correspondence and documents relating to the interpleader action. (*Id.* at ¶ 11). Lombardo responded with copies of the wire transfer of the proceeds and an email from Ulizio that directed him to release the proceeds to Askar. (*Id.*). According to Solomon, this was his first notice of the interpleader. (*Id.* at ¶ 12). On February 22, 2016, Solomon sent a demand letter to Lombardo, requesting the return of the Policies' proceeds. (*Id.* at ¶ 13). From there, Seminole continued to investigate the matter.

In June 2016, eight months after judgment was entered, Seminole filed the instant motion to set aside the judgment and intervene as an interpleader defendant. (Doc. 69). The undersigned referred the motion to Magistrate Judge Mirando for a report and recommendation. Judge Mirando recommends denying the motion (Doc. 112), to which Seminole objects (Doc. 115).

Seminole raises several objections to the Report and Recommendation. First, it maintains that the Report and Recommendation misapplies the imputation of knowledge doctrine in deciding that the motion to intervene is untimely. Second, it argues that the Report and Recommendation errs in finding that Ulizio acted in his capacity as Seminole's CFO when he declined to intervene in the underlying interpleader action. Third, Seminole avers that the Report and Recommendation ignores essential facts concerning Ulizio's actions as CFO. Fourth, it challenges the Report and Recommendation's findings on disputed facts without an evidentiary hearing. For their parts, Federated Life, Fifth Third, and Evans Energy vie for the Court to accept and adopt the Report and Recommendation. (Doc. 116; Doc. 117; Doc. 118).

**STANDARD OF REVIEW**

A district judge "may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  The district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*  And "[t]he judge may also receive further evidenced or recommit the matter to the magistrate judge with instructions." *Id.*

**DISCUSSION**

**A. Motion to set aside judgment**

The logical (and only) starting point is Seminole's request to set aside the judgment.  Absent setting aside this final order, this Court can take no further action.  Under Rule 60 of the Federal Rules of Civil Procedure, a "court may relieve a party or its legal representative from a final judgment, order, or proceeding [.]" Fed. R. Civ. P. 60(b).  A Rule 60(b) motion must be made "within a reasonable time" and, in any event, not more than one year after judgment for reasons based an opposing party's fraud, misrepresentation, or misconduct.  Fed. R. Civ. P. 60(c).

"The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of the facts."  *Stansell v. Revolutionary Armed Forces of Colombia*, No. 8:09-cv-2308, 2013 WL 12132057, at *3 (M.D. Fla. Apr. 29, 2013) (citing *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) (holding that the "desire for a judicial process that is predictable mandates caution in reopening judgments")).  The trial court enjoys broad discretion to grant relief under

Rule 60(b).  See *Edwards v. Joyner*, 566 F.2d 960, 961-62 (5th Cir. 1978)[7] ("Motions under Rule 60(b) are addressed to the sound discretion of the district court, whose ruling will not be disturbed absent a showing of abuse of that discretion."); *see also Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003).

As an initial matter, Rule 60(b) restricts the right to reopen a judgment to a *party* or *its legal representative*.  Fed. R. Civ. P. 60(b).  Thus, as a non-party to the underlying interpleader action, Seminole must establish standing to set aside the judgment.  Its focal effort to achieve standing is moving to intervene under Rule 24 of the Federal Rules of Civil Procedure.  But Seminole need not intervene to have standing because, even as a non-party, its interests are directly affected by the final judgment.  *See Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1521 (11th Cir. 1987) (stating "a nonparty only has standing to raise a challenge of fraud on the court [under Rule 60(b)] if the nonparty's interests are directly affected by the final judgment").  Consistent with the Report and Recommendation, the Court finds that Seminole has standing to assert a Rule 60(b) motion.  (Doc. 112 at 19).  And because Seminole clears this hurdle, the Court need not address the merits of Seminole's motion to intervene.  Instead, the Court will move directly to whether Seminole has shown by clear and convincing evidence that the judgment should be set aside.

Rule 60(b) enumerates six reasons that a court may set aside a final judgment.  Two of which are pertinent here.  The first is for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]"  Fed. R. Civ. P.

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

60(b)(3). The second is the residual ground – "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Court will address each reason in turn.

To prevail on the first exception, "the moving party must prove by clear and convincing evidence that the adverse party obtained the verdict through fraud, misrepresentation, or other misconduct." *Waddell*, 329 F.3d at 1309; *see also Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th Cir. 2007). In addition, the movant must show that the alleged fraud prevented it from making a full and fair presentation of its case. See *Waddell*, 329 F.3d at 1309.

Even accepting Seminole's factual allegations as true, it falls short of showing fraud by clear and convincing evidence. The crux of Seminole's argument is that Evans Energy and Fifth Third colluded with Ulizio to conceal Seminole's interest in the Policies so that they could share the proceeds. (Doc. 69 at 13). Seminole also argues that Evans Energy and Fifth Third both failed to alert the Court of its interests in the Policies. Seminole further offers separate arguments as to Evans Energy and Fifth Third Bank. As to Evans Energy, Seminole takes issue with Lombardo answering this action by stating that Evans Energy had a sole interest in the Policies. (*Id.* at 13-14). Seminole claims that Lombardo knew of Seminole's superior interest, as he had previously acknowledged Seminole as Evans Energy's successor. (*Id.* at 14). For Fifth Third's part, Seminole claims that the bank received nearly half of the Policies' proceeds without ever mentioning Seminole's Term Note. (*Id.*). And to make matters worse, Seminole maintains that Fifth

Third should have credited the $1.8 million it received to the amount due on Seminole's Term Note.  (*Id.* at 15).[8]

To be sure, Evans Energy sold certain assets to Seminole, and as consideration, Seminole assumed Evans Energy's debt to Fifth Third and delivered to it a Term Note for $5.625 million.  But whether Evans Energy's interest in the Policies were included in the sale to Seminole is contested.  To that end, the Court is hard-pressed to find that Evans Energy had committed Rule 11 fraud by stating that it had a sole interest in the Policies' proceeds.  Similarly, whether Fifth Third should have credited the proceeds to the amount due on Seminole's Note does not constitute fraud, misrepresentation, or misconduct. Seminole's attempt to create fraud through this complex web of facts and inferences is unconvincing.

Moreover, while Rule 60(b)(3) aims to redress judgments unfairly obtained, Seminole wants to take this case one step further and litigate the alleged misconduct by Ulizio, Evans Energy, and Fifth Third.  The state law claims that Seminole proposes to assert in its crossclaims and third-party complaint – breach of the duty of loyalty, breach of fiduciary duty, conversion, civil theft, and conspiracy – are better suited for a separate action.  These claims are still available to Seminole without the Court having to set aside the judgment.  So, while Seminole may prefer to stay in federal court, the Court is not obligated to set aside its judgment when Seminole has another reasonable course of

---

[8] Based on Seminole's proposed amended answer, cross-claims, and third party complaint attached to its objections to the Report and Recommendation (Doc. 115-1), it appears that it may be abandoning claims against Fifth Third. For purposes of this Order, the Court will consider the claims as presented to Judge Mirando for the Report and Recommendation.

action to resolve this matter and will not be prejudiced. The Court, therefore, declines to award Seminole the extraordinary remedy of setting aside the judgment.

As to timeliness, the Court finds suspect that Seminole waited four months before bringing the instant motion. Even without imputing Ulizio's knowledge on Seminole and taking that it first learned of the underlying interpleader action in February 2016, it offers nothing more than its need to investigate the matter further as grounds for not moving to intervene earlier.

One last point on Rule 60(b)(3) – the facts of this case do not fit neatly under this subsection's purview. This rule is usually invoked when the moving party was unable to present an otherwise meritorious claim fully and fairly at trial because the opposing side misrepresented or provided fraudulent information during discovery. *See, e.g.*, *Johnson v. Law Offices of Marshall C. Watson, P.A.*, 348 F. App'x 447, 448 (11th Cir. 2009) ("[O]nly the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." (citation omitted)); *In re Braga*, 272 F.R.D. 621, 626 (S.D. Fla. 2011) (stating a party moving under [Rule] 60(b)(3) must prove the "existence of an unconscionable plan designed to improperly influence the court in its decision"). This is not one of those cases. Further complicating matters is Seminole accusing its own CFO of colluding with Evans Bank and Fifth Third to keep it out of this action. Although these points alone are not dispositive, they are telling in the applicability of Rule 60(b)(3).

Seminole's attempt to set aside the judgment under Rule 60(b)(6)'s residual provision fares no better. (Doc. 69 at 12-13). As stated, Rule 60(b)(6) offers relief from judgment for "any other reason that justifies relief." This catchall provision "offers relief

11

from judgment only to accomplish justice and only in the most 'extraordinary' circumstances." See *Harduval v. Gen. Dynamics Corp.*, 801 F. Supp. 597, 612-13 (M.D. Fla. 1992). Indeed, "the structure and phraseology of Rule 60(b) indicate that subsection six was intended as a residual clause, to be used only in dealing with a request for relief not falling within clauses one through five." *Id.* at 613 (citations omitted); *see also Gelinas v. Accelerated Benefits Corp.*, No. 6:13-cv-249, 2005 WL 2656575, at *1-2 (M.D. Fla. Oct. 18, 2005). Because fraud and misconduct is the foundation of Seminole's motion to set aside the judgment, the Court need not consider its secondary argument under Rule 60(b)(6). However, given Seminole's fraud argument does not fit squarely within Rule 60(b)(3)'s purview, the Court will forge ahead.

Here, Seminole maintains that its due process rights have been violated because it was deprived any opportunity to assert a claim to the Policies' proceeds before the funds were distributed. (Doc. 69 at 12). But its case law support for this proposition addresses Rule 19, which governs joinder, a related, but separate principle than Rule 24's intervention. And all but one case is non-binding authority. Moreover, for the reasons discussed *supra*, Seminole may seek judicial redress against Ulizio, Evans Energy, and Fifth Third by filing a separate suit alleging the same cross-claims and third-party claims that it wishes to assert here. At bottom, the Court finds that Seminole has failed to establish extraordinary circumstances to set aside the judgment and to disrupt the finality of this action.

Finally, Seminole maintains that an evidentiary hearing regarding its Rule 60(b) motion is required. The Court disagrees. A court is not obligated to convene a hearing on a Rule 60(b) motion, but it may choose to do so in its discretion. *See Cano v. Baker,*

435 F.3d 1337, 1342-43 (11th Cir. 2006); *see also* Atkinson v. Prudential Prop. Co., Inc., 43 F.3d 367, 374 (8th Cir. 1994). Based on the parties' extensive briefing and exhibits, an evidentiary hearing would have been redundant. The Court has carefully and completely considered the record as a whole and is able to determine the pending motion based on the parties' papers. Consequently, the Court finds that an evidentiary hearing is not needed, and that Judge Mirando did not err in failing to hold one.[9]

In conclusion, the Court denies Seminole's motion to the extent it requests to set aside the judgment entered on October 22, 2015.

**B. Federated Life's request for attorney's fees**

Next, Federated Life requests its reasonable attorney's fees, not in a separate motion, but in its response to Seminole Tribe's motion. (Doc. 90 at 10). As the Report and Recommendation finds, this request is procedurally improper. *See* Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."). As such, Federated Life's offhand request for its attorney's fees is denied.

Accordingly, it is now

**ORDERED:**

(1) United States Magistrate Judge Carol Mirando's Report and Recommendation (Doc. 112) is **ACCEPTED** as to its findings on Seminole Tribe of Florida's request to set aside the judgment, as well as to Federated Life Insurance

---

[9] For the same reasons, the Court adopts the Report and Recommendation's recommendation to deny Federated Life's request for oral argument. (Doc. 112).

    Company's request for oral argument and attorney's reasons.  For the reasons set forth herein, the Court need not accept, reject, or modify the Report and Recommendation as to its findings on Seminole's request to intervene.

(2) Seminole Tribe of Florida, Inc.'s Motion to Intervene as Defendant, Reopen Interpleader, and Set Aside Judgment (Doc. 69) is **DENIED**.

(3) Federated Life Insurance Company's request for oral argument (Doc. 91) and request for attorney's fees (Doc. 90 at 10) are **DENIED.**

**DONE** and **ORDERED** in Fort Myers, Florida this 29th day of March 2017.

*/s/ Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record